# CASES

## IN THE

# SUPREME JUDICIAL COURT

### FOR

## THE COUNTY OF SOMERSET, JUNE TERM, 1832.

---

### ADAMS *vs.* GOULD *& al.*

A sheriff, being liable to answer for certain defaults of his deputy, and being insolvent, delivered over to his own sureties, who had already suffered damage, the deputy's official bond, with authority to put it in suit, and apply the money to their own indemnity. They appointed one of their number as agent to defend all suits which might be brought against them, and pay such demands as he might judge advisable. The deputy's bond was then put in suit, and judgment rendered for the whole penalty, and execution awarded and issued for a lesser sum, being the amount of damages for existing breaches. Upon payment of this lesser sum by a friend of the deputy, to the agent, the latter assigned to him the judgment, designated only by the names of the parties and the term in which it was rendered.

Hereupon it was held that the authority granted by the sheriff was not sufficient to authorize a discharge of the whole penalty of the bond, unless it was necessary for their indemnity, which was not the present case ;—and that if it were, yet the agent had no sufficient authority to assign the judgment.

Where judgment is rendered for the whole penalty of a bond, to stand as security against farther breaches ; and upon a hearing in chancery a decree is made, that execution be issued for a lesser sum, being the amount of existing damages ; and the plaintiff, in consideration of the payment of this sum, releases " the judgment" without more saying ;—*quære* whether the release extends beyond the judgment or decree in chancery, for the lesser sum.

THIS was a *scire facias* brought in the name of the late sheriff of this county, to have further execution of a judgment rendered upon

the bond of one of his deputies ; and was sued out in behalf of the sheriff, in his official bond to the Treasurer of the State.

It appeared that the sureties of *Adams* had suffered for his defaults, occasioned by those of *Gould,* and that for their indemnity he had delivered over to them the bond of *Gould,* with a written assignment, not under seal, authorizing them to put it in suit, to apply whatever monies they might collect to their own use, until fully indemnified, and to " discharge the execution." These sureties, ten in number, constituted *James Dinsmore,* Esq. one of them, as agent for the whole, " to defend all such suits as might be brought against them as the bondsmen of *Adams,* employ attornies, and pay such demands as he in his judgment should think advisable ;" agreeing to reimburse him for their proportion of such monies as he should expend, and for his services. This writing was not under seal. The bond of *Gould* was then put in suit, and his property attached sufficient to satisfy the first execution which was ultimately awarded upon the judgment ; for which property one *David Gilman* gave his receipt to the attaching officer. Upon the issuing of that execution, *Gilman* gave his promissory note to *Dinsmore* for the amount; taking his assignment under seal, in these terms :—" In consideration of a note signed by *David Gilman* for the sum of $333,20, payable in six months and interest, I hereby assign over and transfer to the said *Gilman* a judgment obtained in the Supreme Judicial Court in and for the county of *Somerset, June* term 1828, in favor of *Benjamin Adams* against *Joshua Gould* and others ; hereby authorizing the said *Gilman* to collect the same for his own use and benefit, without recourse to me or to said *Adams* for the payment of debt or costs. Witness my hand and seal. *James Dinsmore,* agent for *Adams* and bondsmen." On the back of this instrument *Gilman* executed a regular release of the judgment to *Gould* and his bondsmen.

The defendants relied upon these transactions as constituting a discharge of the entire judgment rendered for the penalty of the bond. But it was insisted on the other side that the sureties of *Adams* had no authority to transfer the judgment to *Gilman ;* and

that if they had, yet they in fact had only assigned to him the amount for which execution had then been awarded. The jury were instructed by *Weston J.* before whom the cause was tried, that the defendants were not discharged, if they were satisfied that only the amount for which execution was obtained, was assigned, or intended to be assigned. And they found for the plaintiff; the points raised at the trial being reserved for the consideration of the Court.

*Allen*, for the plaintiff.

*Boutelle*, for the defendants.

Weston J. delivered the opinion of the Court.

The defendants claim to be released and discharged from the judgment, upon which this suit is brought, by the party to whom the same had been assigned. To this defence, two objections are made. First that Mr. *Dinsmore*, the party making the assignment, had no authority from the plaintiff so to do. And, secondly, that the instrument, relied upon as an assignment, transferred a former execution only, and not the judgment. The authority of *Dinsmore* is derived from the plaintiff to his sureties, and from them to *Dinsmore*, as their agent. The power, which the plaintiff executed, recites that his sureties had been called upon to pay money for the default of *Joshua Gould*, his deputy, and he thereupon authorizes them to put his bond in suit, against him and his sureties, and to apply whatever money might be collected thereon to their own use, until fully indemnified. For which purpose, he thereby assigned and delivered over the bond to the sureties. The purpose was a limited one. They were to avail themselves of the bond only for the collection of such sums as might be wanted for their indemnity. It contains no authority to discharge the bond, or to discharge or assign the judgment for the penalty, which might be rendered thereon. In this the plaintiff might have an interest, beyond what was wanted to reimburse the sureties.

The instrument, given by the sureties to *Dinsmore*, appoints him agent to defend, at their joint expense, such suits as had been, or

might be, brought against them, by reason of their having become sureties for the plaintiff. And it contains no other authority. The release therefore cannot have the effect to discharge the defendants, for the want of authority in *Dinsmore* to assign the judgment.

But if he had such authority, it is by no means clear, that the judgment for the penalty was necessarily assigned, by the language used. In a suit on a bond, conditioned to indemnify the obligee or save him harmless from certain liabilities, judgment is technically rendered for the whole penalty, to stand as security for existing or subsequent breaches. But there is a further order or judgment of court that the plaintiff have execution for a sum then liquidated, being a part of the penalty. Now we are not satisfied that the term judgment, used in the instrument of assignment, is by law so exclusively appropriated to the technical judgment for the penalty, as to be beyond the reach of all explanatory testimony. If not, the coincidence between the sum paid by the assignee, and the amount of the execution, and the fact that he could have no just claim upon the sureties beyond that amount, satisfied the jury, and we think fairly, that the judgment assigned was that rendered in chancery, determining the sum for which execution should issue. But it is unnecessary to decide upon this point, as we are all of opinion that the sureties of the plaintiff had no authority to assign the judgment for the penalty.

*Judgment on the Verdict.*